UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and ARTHUR H. BUNTE, JR., as Trustee, | |
| Plaintiffs, | Case No. 16-cv-2743 |
| v. | Judge John Robert Blakey |
| B&M MARINE CONSTRUCTION, INC., DIVERSIFIED VENTURES, INC., ROGER WOONTON, ROBERT KENNEDY, GERARD PERRY, and JAMES BRYANT, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Central States, Southeast and Southwest Areas Pension Fund and fund trustee Arthur Bunte, Jr., (Plaintiffs, or the Fund) bring this action in connection with an employer's withdrawal from a multiemployer pension plan. [38]. Such withdrawals incur liability under the Employee Retirement Income Security Act of 1974 (ERISA), as amended by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 USC § 1001 *et seq*. Plaintiffs allege the following claims: (1) ERISA withdrawal liability for Defendant Diversified Ventures, Inc. (Count I); (2) state-law claims for fraudulent transfers against individual defendants Roger Woonton, Robert Kennedy, Gerard Perry, and James Bryant (Count II); (3) a claim under ERISA that defendants Diversified Ventures, Woonton, Kennedy, Perry, and

Bryant made transfers to evade or avoid ERISA withdrawal liability (Count III); and (4) successor liability against B&M Marine Construction, Inc. (Count IV). [38]

Before this Court are motions to dismiss or transfer venue brought by B&M Marine Construction [42] and Robert Kennedy [48]. For the reasons explained below, Defendants' motions are denied.

## I. Background[1]

### A. Prior Judgments

The Plaintiff pension fund is a multiemployer pension plan within the meaning of ERISA sections 3(37) and 4001(a)(3). [38] ¶ 5; 29 USC §§ 1002(37), 1301(a)(3). The Fund's trustees administer the Fund in Rosemont, Illinois, [38] ¶ 6, within this judicial district. Plaintiffs' suit results from the withdrawal of a Florida corporation, Powermix Industries, from the Fund in 2012. *See id.* ¶¶ 17, 24; *Cent. States, Se. & Sw. Areas Pension Fund, et al. v. Powermix Indus., Inc.*, No. 13-cv-6250 (N.D. Ill. Dec. 20, 2013) (Judgment I); Complaint ¶¶ 11–12, Judgment I, No. 13-cv-6250.

In December 2013, Plaintiffs obtained a judgment against Powermix Industries for its "complete withdrawal" from the Fund on September 9, 2012. *See* Judgment I; Complaint ¶¶ 11–12, Judgment I, No. 13-cv-6250. The judgment awarded Plaintiffs $1,179,689.12 in ERISA withdrawal liability. *See* Judgment I.

In November 2014, Plaintiffs obtained a second judgment against Pile & Marine Construction and BK Marine Construction, two Florida corporations under

---

[1] This Court draws facts from the amended complaint [38]. This Court also takes judicial notice of related judgments as the fact of those judgments is "not subject to reasonable dispute." Fed. R. Evid. 201(b); *Gen. Elect. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081–82 (7th Cir. 1997).

common control with Powermix Industries, and thus jointly and severally liable for Powermix's withdrawal liability. *See* [38] ¶ 19; *Cent. States, Se. & Sw. Areas Pension Fund, et al. v. Pile & Marine Constr., Inc., et al.*, No. 14-cv-6174 (N.D. Ill. Nov. 14, 2014) (Judgment II). This judgment entitled Plaintiffs to recover Powermix's withdrawal liability from Pile & Marine and BK Marine. *Id*.

None of the three Florida corporations against which Plaintiffs obtained judgments—Powermix Industries, BK Marine, and Pile & Marine—have made payments toward the withdrawal liability. [38] ¶ 20.

**B.    This Case**

In their present suit, Plaintiffs seek to recover the unpaid withdrawal liability from two additional Florida corporations they allege to be sufficiently related to Powermix Industries to share its withdrawal liability: Diversified Ventures and B&M Marine Construction. Plaintiffs also bring claims against individual defendants for participating in transactions allegedly intended to help Powermix avoid paying its withdrawal liability. [38].

Plaintiffs allege that, when Powermix Industries withdrew from the Fund in September 2012, Diversified Ventures was part of the group of commonly controlled businesses jointly and severally liable with Powermix. *Id*. ¶¶ 21–24. Thus, Diversified, Pile & Marine, BK Marine, and Powermix Industries constitute a single employer under ERISA and are jointly and severally liable for Powermix Industries' withdrawal liability. *See id*. ¶¶ 24, 47. Plaintiffs call these four companies the "Powermix Controlled Group." *Id*.

3

In July 2012—three months before Powermix Industries withdrew from the Fund—Plaintiffs allege that Defendant B&M Marine Construction acquired the "assets and operations" of Powermix Industries, Pile & Marine, and BK Marine. *Id.* ¶ 25. B&M also acquired construction equipment from the Powermix Controlled Group in December 2012 and February 2013. *Id.* ¶¶ 26, 38. Plaintiff alleges that B&M conducts "the same marine construction operations" previously conducted by the Powermix Controlled Group; operates out of the same commercial property the Group used in Deerfield Beach, Florida; and employs many workers once employed by the Group. *Id.* ¶¶ 27–29. B&M's four shareholders are the adult sons of two former shareholders of the Powermix Controlled Group who held 50 percent of the Group's shares. *See id.* ¶¶ 21–23, 30–32. Finally, two of B&M's shareholders—representing 50 percent of its shares at one time—held overlapping positions as officers in B&M and the Powermix Controlled Group, including at the time of the February 2013 purchase of equipment from the Group. *Id.* ¶¶ 33–34.

When Powermix Industries withdrew from the Fund in 2012, Defendant Robert Kennedy owned 25 percent of Pile & Marine and 25 percent of Diversified Ventures. *Id.* ¶¶ 21–22. At the time, Powermix Industries and BK Marine were wholly-owned subsidiaries of Pile & Marine. *Id.* ¶ 23. Plaintiffs further allege that Kennedy was a shareholder of Diversified Ventures during the December 2012 and February 2013 sales of equipment from the Powermix Controlled Group—including Diversified—to B&M. *Id.* ¶¶ 51–54. The proceeds of these sales went to Diversified Ventures "and ultimately to its shareholders," including Kennedy. *Id.* ¶¶ 38, 42,

53–54. Plaintiffs also allege that the Group received a demand for Powermix's withdrawal liability in January 2013, shortly before the February 2013 transfer; that the construction equipment transferred to B&M represented "the essential assets" of the Group's business; and that the transfers began shortly after the Group incurred its withdrawal liability. *Id.* ¶¶ 35, 54–58. Based upon these events, Plaintiffs allege that Defendant Kennedy participated in transferring equipment to B&M "with actual intent to hinder, delay, or defraud" the Fund, and the principal purpose of evading or avoiding the Group's withdrawal liability. *Id.* ¶¶ 62–64.

Plaintiffs initiated this suit in March 2016. [1]. In their original complaint, Plaintiffs named B&M as a defendant based upon its alleged successor liability for Powermix's withdrawal liability. *Id.* In June 2017, Plaintiffs amended the complaint to add the present defendants and now bring claims for withdrawal liability (Count I), fraudulent transfers (Count II), evading or avoiding ERISA liability (Count III), and successor liability as to B&M (Count IV). [38].

Before this Court are motions to dismiss or transfer venue brought by B&M Marine Construction [43] and Kennedy [49]. Defendants move to dismiss for lack of personal jurisdiction and improper venue, on the grounds that the ERISA jurisdiction and venue provisions do not apply to Plaintiffs' claims, which are otherwise not properly brought in this district. In the alternative, Defendants seek to transfer venue to the Southern District of Florida. Kennedy also moves to dismiss Count III for failing to state a claim against him and raises a statute of

5

limitations defense to Count II. For the reasons explained below, Defendants' motions are denied.

## II.     Legal Standard

When a defendant moves to dismiss a claim under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff has the burden of proving jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). An evidentiary hearing is only required if material facts are in dispute; otherwise, a district court ruling upon the parties' written submissions need only determine that the plaintiff has made out "a *prima facie* case of personal jurisdiction." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Because Defendants' motions are based upon legal objections to Plaintiffs' ERISA claims, [43] at 4, [49] at 8, no hearing is needed here.

The plaintiff has the burden of establishing that venue is proper, *AGA S'holders, LLC v. CSK Auto, Inc.*, 467 F. Supp. 2d 834, 842 (N.D. Ill. 2006), but on a motion to dismiss for improper venue under Rule 12(b)(3), courts "accept the plaintiffs' version of events as true," *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011). If the district court considers any facts outside the complaint, then in doing so, the court must resolve "any factual conflicts" and draw "all reasonable inferences" in favor of the plaintiff. *AGA S'holders*, 467 F. Supp. 2d at 842–43.

To survive Defendants' Rule 12(b)(6) motion, the Complaint must "state a claim to relief that is plausible on its face." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). A claim has "facial plausibility when the plaintiff pleads

6

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

## III. Analysis

Defendant B&M moves to dismiss the claim against it for lack of personal jurisdiction and improper venue. Defendant Kennedy moves to dismiss the claims against him on the same grounds; Kennedy also raises a statute of limitations defense to Count II and challenges Count III for failing to state a claim upon which relief can be granted. Both Defendants move in the alternative for a transfer of venue. This Court addresses the Defendants' motions to dismiss in turn, and finally considers their motions to transfer venue.

### A. B&M Marine Construction

The sole claim against Defendant B&M is Plaintiffs' successor liability claim (Count IV). B&M moves to dismiss this claim on the grounds that successor liability is not an ERISA claim, and Plaintiffs therefore cannot rely upon ERISA's jurisdiction and venue provisions. [43] at 4. B&M contends that absent those provisions, neither personal jurisdiction nor venue is proper in this district. *Id*. at 7–9. Because this Court finds that ERISA jurisdiction applies to successor liability claims imposing ERISA-based liabilities, it denies B&M's motion to dismiss.

7

Successor liability remains a well-developed doctrine of federal common law. *See Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1326–27 (7th Cir. 1990). The Seventh Circuit has applied the doctrine to ERISA cases for over 25 years. *See id.* at 1329. In fact, federal common law successor liability is "the default rule in suits to enforce federal labor or employment laws," including ERISA. *Teed v. Thomas & Betts Power Solutions, LLC*, 711 F.3d 763, 769 (7th Cir. 2013). Imposing successor liability for claims based upon ERISA withdrawal liability ensures that present and future participants in pension plans do not suffer from previous participants' failure to pay their share, and accords with Congress' intent to facilitate the collection of pension plan contributions. *Artistic Furniture*, 920 F.2d at 1328.

A plaintiff bringing an ERISA successor liability claim must show "sufficient indicia of continuity between the two companies and that the successor firm had notice of its predecessor's liability." *Id.* at 1329. Where the plaintiff has sufficiently pled those two elements, ERISA's jurisdictional and venue provisions apply. *See Trs. of Chi. Painters & Decorators Pension Fund v. NGM Servs., Inc.*, No. 14-c-5701, 2014 WL 7330939, at *2 (N.D. Ill. Dec. 22, 2014); *see also Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1038 (7th Cir. 2000) (plaintiffs' direct liability claim under ERISA was sufficiently pled to allow exercise of federal jurisdiction pursuant to ERISA).

Here, Plaintiffs have sufficiently alleged the continuity of operations and notice requirements to make a plausible claim for successor liability against B&M.

8

At the pleadings stage, that is enough to support the exercise of ERISA jurisdiction. *See Elite Erectors*, 212 F.3d at 1038; *NGM Servs.*, 2014 WL 7330939, at *2 (sustaining ERISA jurisdiction when plaintiff's successor liability claim survived a judgment on the pleadings); *see also Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012) (on a motion to dismiss, plaintiffs "need only make a prima facie showing of jurisdictional facts").

The continuity of operations prong may be shown by the successor's use of the predecessor's workforce, equipment, and premises, as well as overlapping leadership. *Artistic Furniture*, 920 F.2d at 1329. Here, Plaintiffs allege that B&M acquired the bulk of the Powermix Controlled Group's assets and equipment; that B&M employs many of the Group's workers; that B&M operates out of the Group's old commercial address; and that at various times it shared officers and shareholders with the Group. Plaintiffs have therefore sufficiently pleaded the continuity of operations between B&M and Powermix.

The overlap of leadership alleged by Plaintiffs also satisfies the notice requirement, at least at the motion to dismiss phase. Notice of the predecessor's liability can be inferred from "common control or proximity," *Sullivan v. Running Waters Irrigation, Inc.*, 739 F.3d 354, 357 (7th Cir. 2014), or the knowledge that the predecessor's workers were unionized, *Bd. of Trs. of Auto. Mechanics' Local No. 701 Union & Indus. Pension Fund v. Full Circle Grp.*, 826 F.3d 994, 997 (7th Cir. 2016). Under that inquiry, the shared leadership between B&M and the Powermix Controlled Group, along with notice of the Group's withdrawal liability in January

9

2013, allows the plausible inference that B&M knew of the Group's liability, *Yeftich*, 722 F.3d at 915, and thus satisfies the notice requirement for successor liability. Plaintiffs have sufficiently alleged their claim for federal common law successor liability to support applying ERISA's jurisdiction and venue provisions. *See NGM Servs.*, 2014 WL 7330939, at *2; *see also Cent. States, Se. & Sw. Areas Pension Fund v. Sidney Insulation, Inc.*, 235 F. Supp. 3d 1044, 1046, 1054 (N.D. Ill. 2017) (applying federal common law successor liability to an out-of-district corporation based upon ERISA jurisdiction).

In arguing that ERISA jurisdiction fails to cover Plaintiff's successor liability claim, B&M bases its primary objections to personal jurisdiction and venue upon the Supreme Court's decision in *Peacock v. Thomas*, 516 U.S. 349 (1996). In *Peacock*, the Court held that federal courts lack jurisdiction over actions based in state law that attempt to collect on prior judgments for ERISA liability. 526 U.S. at 353–54. Specifically, plaintiffs seeking to hold corporate officers vicariously liable for their employers' pension obligations could not rely on ERISA jurisdiction where the sole, instant cause of action—attempting to pierce the corporate veil—invoked state law and thus failed to provide an independent basis for federal jurisdiction. *Id.*

In light of *Peacock*'s narrow scope, the Seventh Circuit has held that claims asserting direct liability under ERISA—rather than vicarious liability under some other theory—fall properly within the limits of federal jurisdiction. *See Elite Erectors*, 212 F.3d at 1037–38; *Cent. States Pension Fund v. Cent. Transp., Inc.*, 85

F.3d 1282, 1286–87 (7th Cir. 1996). The difference lies in the nature of the action and the basis for the defendants' liability. In *Peacock*, a judgment for ERISA liability had been rendered against a corporation, which did not pay its damages; plaintiffs then sought to collect from the corporation's officers. 526 U.S. at 352. Since ERISA provides no means of enforcing judgments against third parties like the officers, plaintiffs had to rely upon the state-law theory of piercing the corporate veil. *Id.* at 353–54. Thus, the source of the officers' liability was not ERISA but the prior judgment; the nature of the action was to enforce that judgment under state law; and ERISA played no role in the suit and thus could not provide a basis for federal jurisdiction. *Id.*

Where, by contrast, a plaintiff seeks to impose liability under ERISA itself, then that party asserts ERISA liability directly and does not run afoul of *Peacock*. *See Elite Erectors*, 212 F.3d at 1037–38. Direct liability includes cases where plaintiffs seek to impose liability on the alter ego of an entity with ERISA liability: in such cases "everything depends on, and the claim arises under, federal law." *Id.* at 1038. In short, successor liability constitutes another form of direct liability. *NGM Servs.*, 2014 WL 7330939, at *2. A successor liability claim, like an alter ego claim, asserts that two defendants are essentially "*the same entity*"; it seeks to directly impose the original ERISA liability on the successor corporation. *See Elite Erectors*, 212 F.3d at 1038.

Here, Plaintiffs assert that B&M constitutes a continuation of Powermix Industries; and because it is essentially the same entity, it carries Powermix's

11

ERISA withdrawal liability. Therefore, the source of B&M's alleged liability (and Plaintiffs' case) arises from ERISA itself, not any judgment against Powermix. *See id*. As such, ERISA's jurisdiction and venue provisions apply. *Id*. ("All liability under ERISA is federal; a claim 'arises under' federal law when federal law creates the right of action."). Accordingly, B&M's motion to dismiss for lack of personal jurisdiction and improper venue is denied.

### B. Robert Kennedy

Plaintiffs assert two claims against Kennedy: (1) a state-law claim for fraudulent transfers (Count II); and (2) a claim that those transfers were intended to evade or avoid ERISA withdrawal liability (Count III). [38] ¶¶ 51–52, 59–62. Kennedy disputes the validity of the ERISA claim, and therefore contests the application of the ERISA jurisdiction and venue provisions. He also asserts a statute of limitations defense to the state-law claim. This Court first addresses Kennedy's motion to dismiss Count III.

#### 1. ERISA Claim and Jurisdiction

Any transaction undertaken with the "principal purpose" of evading or avoiding ERISA liability may be disregarded. 29 USC § 1392(c). This provision reflects Congress' intent to restrain employers attempting to "shirk their obligations" to pension funds "through deceptive transactions." *See Chi. Truck Drivers v. El Paso Co.*, 525 F.3d 591, 596 (7th Cir. 2008). It therefore allows plaintiffs to reach the "assets that were transferred in order to evade or avoid liability, *as well as the parties to whom they were improperly transferred.*" *Bd. of*

*Trs., Sheet Metal Workers' Nat'l Pension Fund v. Ill. Range*, 186 F.R.D. 498, 502 (N.D. Ill. 1999) (internal quotation marks omitted).

Kennedy argues that § 1392(c) applies solely to employers, and that he was never more than a shareholder in the Powermix Controlled Group. [49] at 9. But courts in this district have held that § 1392(c) is *not* limited to employers. *See Bd. of Trs. of the Auto. Mechanics' Local No. 701 Union & Indus. Pension Fund v. Joyce*, No. 14-c-9890, 2015 WL 1888005, at *4 (N.D. Ill. Apr. 24, 2015). In fact, shareholders are liable if they take affirmative actions intended to evade or avoid ERISA liability, including engaging in transactions undertaken for that purpose. *Ill. Range*, 186 F.R.D. at 501–03. ERISA jurisdiction necessarily includes jurisdiction over the assets and the individual parties involved in such transactions, since, in "disregarding" the transaction, courts must treat the original possessor of the assets as their continued owner; courts must therefore be able to reach the current possessor of the assets. *Id*. at 502.

As a shareholder of the Powermix Controlled Group and a recipient of assets allegedly transferred to avoid Powermix's withdrawal liability, Kennedy is the proper subject of an ERISA evading/avoiding claim. *See id.* (citing *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993); *Connors v. Marontha Coal Co.*, 670 F. Supp. 45, 46–47 (D.D.C. 1987)). Consequently, Kennedy and the claims against him fall within the scope of ERISA jurisdiction. *Id.* at 502–03.

Because Plaintiffs' complaint states a viable ERISA claim, ERISA's jurisdiction and venue provisions apply to Kennedy, and this Court therefore denies

his motions to dismiss for failure to state a claim, for lack of personal jurisdiction, and for improper venue as to Count III.

### 2. Fraudulent Transfer Claim

Plaintiffs' fraudulent transfer claim (Count II) arises under a Florida law providing that a transfer is fraudulent if made by a debtor "with actual intent to hinder, delay, or defraud any creditor of the debtor." Fla. Stat. § 726.105(1)(a); *see* [38] ¶ 54; [49] at 7.

This state-law claim derives from the transfer of assets between the Powermix Controlled Group and B&M in 2012 and 2013; and it therefore arises from the "same nucleus of operative facts" as Plaintiffs' ERISA claim, permitting this Court to exercise supplemental jurisdiction over the state-law claim. *Robinson Eng'g Co. Pension Plan & Trust v. George*, 223 F.3d 445, 449 (7th Cir. 2000). Despite Defendant Kennedy's challenges, this Court retains proper jurisdiction and venue as to Plaintiffs' supplemental state-law claims. *VMS/PCA Ltd. P'ship v. PCA Partners Ltd. P'ship*, 727 F. Supp. 1167, 1174 (N.D. Ill. 1989) (venue is proper over supplemental claims); *see also U.S. ex rel. Hoover v. Franzen,* 669 F.2d 433, 437 (7th Cir. 1982) (supplemental "state law claim is governed in all respects by state law").

Beyond these challenges, Defendant Kennedy also seeks to bar the Florida fraudulent transfer claim based upon the applicable statute of limitations. [49] at 7. That statute provides that a fraudulent transfer claim must be brought "within 4 years after the transfer was made," or, "if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant." Fla. Stat. § 726.110(1). Under Florida law, however, it is only under "extraordinary

14

circumstances" that courts can determine the date on which the limitations period was triggered on the basis of the pleadings alone. *Desak v. Vanlandingham*, 98 So.3d 710, 711 (Fla. App. Ct. 2012). Generally, the date that plaintiffs "could reasonably have" discovered the contested transfer remains a fact-intensive inquiry inappropriate for resolution on a motion to dismiss. *See id*.

Here, Plaintiffs allege fraudulent transfers in the sales of equipment to Defendant B&M in December 2012 and February 2013. [38] ¶¶ 51–52. Deciding exactly when Plaintiffs could have reasonably discovered those transfers, therefore, constitutes the relevant inquiry. Plaintiffs argue that they lacked access to the Defendants' financial records until December 2016, and could not reasonably have known of the transfer before then. [54] at 9. This type of factual question cannot be answered at this stage, especially where, as here, nothing contained in the pleadings establishes "conclusively that the statute of limitations bars the action as a matter of law." *Desak*, 98 So.3d at 711. This Court denies the motion to dismiss with respect to the fraudulent transfer claim. *Id*.

### C. Transfer of Venue

Lastly, Defendants Kennedy and B&M ask this Court to transfer venue to the Southern District of Florida under 28 USC § 1404(a). This Court considers the following factors on a motion to transfer: (1) whether venue is proper in both districts; (2) whether a transfer will better serve the convenience of the parties and witnesses; and (3) whether a transfer will better serve the interest of justice. *See Craik v. Boeing Co.*, 37 F. Supp. 3d 954, 959 (N.D. Ill. 2013) (citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986)). The moving party has the

burden of establishing that "the transferee forum is clearly more convenient." *Coffey*, 796 F.2d at 219–20. The plaintiff's choice will otherwise receive deference: "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). The task of weighing these factors "is committed to the sound discretion of the trial judge." *Coffey*, 796 F.2d at 219.

Along with these factors, this Court must also consider that, in enacting ERISA and the MPPAA, Congress generally intended to permit plaintiffs to bring suits in their home districts. *See Trs. of Hotel Emp. Int'l Union Welfare Pension Fund v. Amivest Corp.*, 733 F. Supp. 1180, 1183 (N.D. Ill. 1990); 29 USC § 1132(e)(2). Congressional intent to facilitate ERISA suits by laying venue in plaintiffs' home district provides more reason to honor the plaintiff's forum selection. *See id.*; *Cent. States Se. & Sw. Areas Pension Fund v. Advance Plumbing & Heating Supply Co.*, No. 89-c-6687, 1990 WL 6826, at *2 (N.D. Ill. Jan. 4, 1990). It "would be counterproductive to require" plaintiff pension funds to incur the costs of litigating out of state when those costs would be passed on to the plan participants Congress sought to protect. *See Cent. States Se. & Sw. Areas Pension Fund v. Lewis & Michael, Inc.*, 992 F. Supp. 1046, 1049 (N.D. Ill. 1998).

Here, venue is proper in this district under ERISA, and Defendants have not established that the transferee forum is so clearly preferable as to disturb Plaintiff's choice. Transferring the case to the Southern District of Florida might very well be

16

convenient for Defendants and their witnesses. [43] at 13; [49] at 12. It would, however, inconvenience Plaintiffs to the equal and opposite extent. Even though Defendants will have various witnesses and discovery production arising in Florida, this factor fails to sufficiently to undermine the substantial deference owed to Plaintiffs' choice of forum in an ERISA action. *See Advance Plumbing,* 1990 WL 6826, at *2. Further, the inconvenience to Plaintiffs deserves careful consideration, given the policy supporting greater protection for the participants in the Fund, who would otherwise bear the additional costs of out-of-state litigation. *See Lewis & Michael*, 992 F. Supp. at 1049. Nor have Defendants attempted to dispute the policy considerations and traditional deference that support granting "substantial weight" to the Plaintiff's choice of forum. *Id.* This Court finds that those factors disfavor transferring this case to the Southern District of Florida. Accordingly, Defendants' motions to transfer venue are denied.

## IV. Conclusion

Defendants' motions to dismiss or transfer [42, 48] are denied. This case is set for a status conference at 9:45 p.m., on 3/6/2018, in Courtroom 1203.

Dated:  January 8, 2018

Entered:

_____
John Robert Blakey
United States District Judge